IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VANESSA D. HALE,                                   No. 3:17-cv-00697-HZ

        Plaintiff,

   v.

NANCY A. BERRYHILL, Acting                         OPINION & ORDER
Commissioner of Social Security,

        Defendant.

George J. Wall
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

/ / /

1 - OPINION & ORDER

Kathryn A. Miller
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221 A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Vanessa Hale brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI in August 2013, alleging an onset date of May 15, 2010. Tr. 229-29, 230-33. Her applications were denied initially and on reconsideration. Tr. 167-71 (Initial); 124-63, 173-78 (Recon.). On August 13, 2015, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 44-71. On November 4, 2015, the ALJ found Plaintiff not disabled. Tr. 17-43. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on right leg pain, left leg pain, anxiety, depression, and back pain. Tr. 254. At the time of the hearing, she was forty-nine years old. Tr. 50 (testifying to date of birth). She is a high school graduate and has past relevant work experience as a ticket taker, gate attendant/bouncer, service station attendant, fast food worker, game attendant, cook, and food service supervisor. Tr. 51, 64-65.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform past relevant work, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Tr. 22.  Next, at step two, the ALJ determined that Plaintiff has severe impairments of lumbar radiculopathy, arthritis, status/post back surgery, status/post right leg fracture, adjustment disorder with mixed anxiety and depressed mood, borderline intellectual functioning, and cocaine abuse.  Tr. 23.  However, at step three, the ALJ determined that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment.  Tr. 25-28.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), meaning she can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  Tr. 29.  The ALJ's RFC includes several additional limitations as follows: (1) she can stand and/or walk for two hours in an eight-hour workday with normal breaks and she can sit for up to eight hours in an eight-hour workday with normal breaks, but she must be allowed to alternate sitting and standing such that she can sit for an hour and then be permitted to stand for five to ten minutes before returning to a seated position, which can

occur throughout the eight-hour workday without a need to leave the workstation; (2) she should not perform work that requires the operation of foot controls; (3) she can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds; (4) she can occasionally balance, stoop, kneel, crouch, or crawl; (5) she must avoid exposure to excessive vibration such as jackhammers; (6) she must avoid all exposure to hazards, such as unprotected heights or dangerous machinery; (7) she can remember, understand, and carry-out tasks or instructions consistent with occupations that are rated with specific vocational preparation (SVP) level of 1 or 2; (8) she would do best in a job that did not require the use of math skills that exceed a third-grade level; (9) she can have superficial, incidental interaction with the general public; and (10) she can work in proximity with co-workers but she will do best in a job that does not require teamwork. *Id.*

With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 36. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as assembler and small products assembler. Tr. 37-38. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 38.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff alleges that the ALJ made two errors: (1) she improperly found Plaintiff's subjective limitations testimony not credible, and (2) she improperly rejected the opinion of an examining physician. She also contends that the Appeals Council erred by declining to review the ALJ's decision in light of new and material evidence.

I. Plaintiff's Credibility

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even

where those activities suggest some difficulty functioning, they may be grounds
for discrediting the claimant's testimony to the extent that they contradict claims
of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ recited the correct two-step credibility analysis. Tr. 29. She then summarized Plaintiff's testimony, noting statements Plaintiff had made either to medical practitioners or in her Adult Function Report. Tr. 29-30. The ALJ stated that in March 2012, Plaintiff told examining psychologist Roderick Calkins, Ph.D., that she was unable to work because of back and leg pain. Tr. 30 (citing (Tr. 533-34, 540). She expressed an inability to stand because of her leg. *Id.* In her August 2013 Adult Function Report, Plaintiff stated that back pain made it difficult to stand, bend, or sit, and leg pain limited standing, kneeling, and walking. Tr. 30 (citing Tr. 263). She complained that stomach issues caused her to frequently run to the bathroom and that depression made it difficult to concentrate and motivate herself to get up each day. *Id.* (citing Tr. 263). She also complained of headaches and "white flash/blurry vision" which made it hard to read and see. *Id.* (citing Tr. 263).

The ALJ noted Plaintiff's 2015 testimony that she experienced pain like a "twisting needle" in her lower back and that sitting, standing, and walking increased her pain. Tr. 30. Plaintiff obtained relief by lying down and elevating her legs. *Id.*; *see* Tr. 57 (hearing testimony). Plaintiff testified that she fell while running to work in 2014 and experiences pain in her left knee as a result. *Id.*; *see* Tr. 58 (hearing testimony). She also described experiencing shooting pain down her right leg from a plate that was placed there during a 2009 surgery to repair a fracture of her right tibial plateau. *Id.*; *see* Tr. 58 (hearing testimony).; Tr. 350 (describing surgery). The ALJ also noted Plaintiff's allegation of right wrist pain. Tr. 30. However, the ALJ noted that

Plaintiff took no pain medication, only vitamins and blood pressure medication.  *Id.*  She was afraid to take pills.  *Id.*  The ALJ also remarked that Plaintiff testified she last used cocaine two and one-half months before the hearing.  *Id.*

Next, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  *Id.*  Following this, the ALJ summarized the medical evidence over the course of four pages.  Tr. 30-34.  Included in this summary are her treatment of certain medical opinions rendered by (1) examining physician Jonathan Harrison, M.D., to which the ALJ gave little weight because the record showed that Plaintiff was more limited; (2) the initial opinion from the state agency medical consultant, to which she gave little weight because new evidence showed that Plaintiff was more limited; (3) the reconsideration opinion from the state agency medical consultant to which she gave partial weight because the evidence showed that Plaintiff was more limited in her ability to stand and in her postural activities, and that she has environmental limitations; (4) an opinion by Physician's Assistant Fern Docekal to which the ALJ gave little weight because P.A. Docekal was not acceptable medical source; (5) the opinions of state agency psychological consultants to which the ALJ gave partial weight because the evidence showed that Plaintiff can do simple tasks, but that she also has social interaction limitations; (6) the opinion of Dr. Calkins to which she gave significant weight; and (7) the opinion of a social worker to which she gave little weight for a variety of reasons.  Tr. 32-24.

After this discussion and summary of the medical evidence, the ALJ then wrote:

The claimant has alleged a high degree of limitation because of her impairments. Although some limitations are to be expected, the record contradicts the claimant's testimony with regard to their nature and extent. As discussed above, the record shows not only that the claimant was capable of a range of unskilled light work, but also that her allegations of the severity of her impairments are not supported by the medical records.

Tr. 34. The ALJ then explained that she was not rejecting Plaintiff's statements about the intensity and persistence of symptoms solely because the statements were, in the ALJ's opinion, not supported by the medical records. *Id.* She added that Plaintiff's daily activities were not limited to the extent one would expect given her complaints of disabling symptoms and limitations. *Id.* The ALJ noted that Plaintiff was able to live alone, shop, care for children, perform personal care independently, and ride public transportation. Tr. 34-35. She also noted that Plaintiff was able to engage in work after her alleged onset date. Tr. 35. Although the ALJ recognized that this work activity did not amount to substantial gainful activity, she explained that Plaintiff's "daily activities have, at least at times, been somewhat greater than the claimant has generally reported." *Id.* Next, the ALJ noted that Plaintiff took no medication and the record showed she had not generally received the type of medical treatment one would expect for a totally disabled individual. *Id.*

The ALJ then returned to a discussion of the medical evidence. She explained:

In sum, the claimant's testimony is not completely supported by the medical evidence. Some reports indicate her pain lessened, other reports show her pain worsening if she stood for more than one or two hours or walks for more than three blocks (see Exhibit B4F). The claimant appeared to sustain another injury to her right knee, but an x-ray of her right knee showed only minimal problems (Exhibit B7F, p. 20). The claimant's back started radiating pain to her legs in about March or April 2014, but she had back surgery in September 2014, and appears she had improvement (Exhibit B11F). The claimant did describe some additional pain following back surgery (Exhibit B12F), but the examiner stated it was clear that the claimant wanted pain medication and nothing else, and

suggested that the claimant would need to work on her coping skills.

Tr. 35.

Plaintiff argues that none of the reasons provided by the ALJ are clear and convincing. In addition to lack of support by the objective medical evidence, the ALJ provided three reasons in support of her credibility determination: (1) Plaintiff's daily activities were inconsistent with her claimed limitations; (2) Plaintiff engaged in work activity after her alleged onset date: and (3) Plaintiff took no medicine and had not received the type of medical treatment one would expect.

A. Activities of Daily Living

Plaintiff argues that the list of activities provided by the ALJ are not inconsistent with Plaintiff's allegations because taking public transportation, performing personal care, and living alone can all be accomplished with breaks to rest, change positions, or lie down. As for the childcare, Plaintiff notes that she did that job before her alleged onset date and long before her knee and back injuries. Tr. 53 (describing work that occurred in 2004 and 2005, which was years before her 2010 alleged onset date). Thus, Plaintiff argues, her activities are actually consistent with her claimed limitations and provide no basis for rejecting her testimony.

Defendant contends that the ALJ's reasons are supported by the record, largely repeating the ALJ's recitation of Plaintiff's activities. Defendant fails to explain how the childcare Plaintiff provided which was years before her alleged onset date, and was performed before she had two surgeries, is relevant to the credibility determination. Defendant also fails to explain why the other activities cited by the ALJ undermine Plaintiff's testimony that she experienced debilitating pain which was relieved by lying down, elevating her legs, and frequently changing position. Nothing about personal care, living alone, or the ability to use public transportation is obviously

inconsistent with her testimony.

In support of the ALJ's finding, Defendant notes that at one point, Plaintiff reported walking for exercise and in 2012 she indicated to a provider that she could do sedentary work. Defendant argues that this is additional evidence of activities which are inconsistent with her level of claimed disability. But, while Plaintiff reported in 2011 that she could walk for a longer period of time than she used to be able to, it is unclear if this was with or without taking breaks. Tr. 468. This was also before her 2014 back surgery. And, about eight months after the 2011 report, she reported being able to walk just two to three blocks before needing to take a break. Tr. 429. Additionally, while she told her provider in January 2012 that she thought she could perform sedentary work, this was before Plaintiff's 2014 back surgery. *Id.* During the hearing, which occurred after the back surgery, she stated she could not sit for long periods of time. Defendant's citation to Plaintiff's earlier statements about walking ability and performing sedentary work is not clear and convincing evidence of an inconsistency with her allegations absent some discussion about the varying nature of her symptoms, the impact of her low back symptoms which prompted her 2014 back surgery, and her post-2014 back surgery condition.

Plaintiff does not mention shopping, which the ALJ found to be inconsistent with Plaintiff's alleged limitations. But, the only record evidence of Plaintiff's shopping activity is consistent with her allegations. At the hearing, Plaintiff testified that grocery shopping was "really hard." Tr. 55. She explained she has "to just lean on my cart and get around as much as I can and then try to sit down somewhere." *Id.* In her Adult Function Report, she stated that the only shopping she does is for food, she does it in stores, and goes only once per month. Tr. 266.

The activities of daily living cited by the ALJ do not contradict Plaintiff's allegations.

Defendant's citations to additional places in the record where Plaintiff reported an ability to walk for longer periods of time and perform sedentary work fail to account for varying reports of symptoms and any impact Plaintiff's later lumbar disc surgery may have had on those reports, one of which is contradicted by a subsequent record eight months later in any event.

B. Work Activity

Plaintiff argues that her post-onset date work activity supports rather than contradicts her alleged limitations. In late October 2013, Plaintiff told an examining physician that she had recently taken a job requiring her to work ten hours per day. Tr. 350. But, at the same time, she told the physician that she found the work excruciating because she was on her feet for all of that time. *Id.* She told the physician that she thought she would be unable to hold onto the job because of the pain. *Id.* Her total earnings for this employer were $1,305.26, indicating she did not stay at the job very long. Tr. 239, 246. The ALJ also noted that Plaintiff attempted to work in 2014 but was terminated due to physical complaints. Tr. 22.

A claimant's work activity during a period of alleged disability may support the ALJ's decision to discount a claimant's testimony. *E.g.*, *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009). Although Defendant argues that the attempted work activity suggests that Plaintiff's activities were "somewhat greater" than she alleged, I agree with Plaintiff that the record here shows otherwise. In *Bray*, the claimant had recently worked for two years as a personal caregiver and had also sought other work. However, in an earlier case with different facts, the Ninth Circuit rejected an ALJ's reliance on a claimant's attempted return to work to undermine the claimant's limitations testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007). There, the claimant worked for nine weeks after his alleged onset date and during difficult

economic circumstances. *Id.* at 1036. Ultimately, his work attempt failed because of his impairments. *Id.* at 1037. According to the Ninth Circuit, the failed work attempt was not a clear and convincing reason for finding that the claimant's symptoms could not have precluded him from maintaining employment during the relevant period of time. *Id.*

Similarly here, the record establishes that Plaintiff has been homeless at times, and, before her limited work activity in 2013, she had zero reported income in 2011 and 2012. Tr. 246. It is reasonable to assume that like the claimant in *Lingenfelter*, she was experiencing economic hardship. Notably, unlike the claimant in *Bray*, Plaintiff here, like the claimant in *Lingenfelter*, could not sustain the work activity because of her impairments. The ALJ's finding is based on Plaintiff's ultimately unsuccessful work attempt. However, as in *Lingenfelter*, an attempt to work which cannot be sustained because of a claimant's impairments is not a clear and convincing reason to reject a Plaintiff's subjective limitations testimony. The ALJ erred in this regard.

C. Conservative Treatment

The ALJ provided two reasons suggesting that Plaintiff's testimony was unreliable because she had received conservative treatment. *See Tommasetti*, 533 F.3d at 1040 (favorable response to conservative treatment undermined the claimant's reports of disabling pain). First, she indicated that Plaintiff took no medication. Next, she stated that Plaintiff had not "generally" received "the type of medical treatment one would expect for a totally disabled individual." Tr. 35.

Plaintiff testified at the August 2015 hearing that she took no medication other than something for her high blood pressure and Vitamin D. Tr. 59. The ALJ asked a compound

question of whether she was prescribed anything for pain and if she took any over-the- counter medication to which Plaintiff responded "No." *Id.* She denied using marijuana. *Id.* In response to the ALJ's question as to when she last used cocaine, Plaintiff responded that it had been two and one-half months. *Id.* The ALJ remarked that Plaintiff had been doing well and inquired why she relapsed that last time. *Id.* Plaintiff stated that she was under a lot of stress and did not have pain pills at the time. *Id.* She had been keeping herself clean since. Tr. 59-60. Later, in response to her attorney's request to explain her reluctance to take as few pills as possible, Plaintiff testified that she was scared of taking them. *Id.* She stated that there are "too many pills" because "you have to take I mean, you know, to get rid of one pain to another and another. Then I have something else. It's just, it's just scary taking - - I'm just scared of the, the after effects of the pills." Tr. 60-61.

The record contains many references to Plaintiff taking medication to alleviate her back or knee pain. *E.g.*, Tr. 445 (Oct. 2011 prescribed Vicodin); Tr. 430 (Feb. 2012 taking acetaminophen); Tr. 526-40 (March 2012 report by Dr. Calkins summarizing medical records of several years and noting Plaintiff's prior history of cocaine use followed by being clean for many years with recent "relapses,"; further noting that her pain complaints had been treated with Vicodin and other pain relievers with present use of ibuprofen); Tr. 338 (Oct. 2013 taking ibuprofen); Tr. 350 (Oct. 2013 report to Dr. Harrison that her back pain was alleviated by cold and medication). And, the record shows that in 2015, she was again taking narcotic pain medication in addition to ibuprofen. *E.g.*, Tr. 648 (Sept. 2015 taking ibuprofen and hydrocodone).

Other than the reference to medication, the ALJ provided no specific reason to explain

why she found that Plaintiff had not received "the type of" medical treatment that the ALJ would expect for someone with disabling pain. Plaintiff notes that she did undergo two surgeries, one of which included the permanent placement of a plate and screws in her tibia, and then lumbar disc surgery in 2014. Defendant provides only one example in support of the ALJ's decision: that Plaintiff declined to undergo a prescribed course of physical therapy in 2009 because she needed to travel for work with her carnival employer. As Plaintiff notes, however, 2009 is before her alleged onset date and is not necessarily probative of her pain after that date. And, at the hearing, she testified she had done physical therapy at some point but was limited to six appointments. Tr. 60.

Overall, the ALJ's reliance on conservative treatment to reject Plaintiff's subjective testimony is either not well explained or is not clearly established in the record. The "types of treatment" the ALJ refers to is unclear without more specific discussion. The record shows two surgeries which can hardly be described as conservative treatment. The one specific reason provided by Defendant regarding Plaintiff's failure to follow through on physical therapy is before the alleged onset date. Moreover, Defendant fails to account for the choice facing Plaintiff at that time: go to physical therapy and lose her job, or continue with her job which prevented her from attending physical therapy. Additionally, Plaintiff did participate in limited physical therapy at some point.

The medication history is ambiguous and requires a more thorough discussion by the ALJ for the ALJ to rely on it as contradicting Plaintiff's complaints of pain. While Plaintiff testified at the hearing that she was not taking medication at that time, the record shows she took narcotic pain medication at times both before and after the hearing. She also took over-the-counter pain

medication.  With a history of drug abuse and a fear of taking "too may pills," it may or may not

be reasonable for Plaintiff to take little or no medication for treatment of what may be disabling

pain.  Absent further discussion and explanation, the record does not provide a clear and

convincing basis for the ALJ to reject Plaintiff's pain testimony based on a record of conservative

treatment.

     D.  Summary re: Credibility

     In addition to the three specific reasons discussed here, the ALJ also relied on

inconsistency with the medical record to support her negative credibility determination.

However, this reason cannot be the sole reason put forth in support of the ALJ's finding.  *Rollins*

*v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective

medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective

complaints based solely on a lack of objective medical evidence to fully corroborate the alleged

severity of pain") (internal quotation marks and brackets omitted); 20 C.F.R. §§ 404.1529(c),

416.929(c) (ALJ may consider objective medical evidence in determining a claimant's credibility

regarding subjective symptom testimony, as long as the ALJ does not reject such testimony

solely because it is unsubstantiated by the objective medical evidence).  Because the other bases

cited by the ALJ to reject Plaintiff's subjective pain and limitations testimony were not clear and

convincing reasons supported by substantial evidence in the record, the only remaining reason is

the lack of support in the objective medical record.  Under the controlling law, this may not be

the sole reason.  As such, the ALJ's credibility determination was in error.

II.  Physician's Assistant Opinion

     In October 2013, Plaintiff underwent an "employability exam" with P.A. Docekal.  Tr.

338-48.  Plaintiff's chief complaints were leg and back pain.  Tr. 338.  P.A. Docekal noted

Plaintiff's current medication of ibuprofen, past medical and surgical history, and social and

family history.  Tr. 338-39.  P.A. Docekal conducted a physical examination and then completed

a physical functional limitations assessment.  Tr. 339-46.  Based on her examination, she opined

that Plaintiff was able to perform work in a "regular predictable manner" at the sedentary level,

defined as the ability to lift 10 pounds maximum, to frequently lift or carry lightweight articles,

and to walk or stand only for brief periods.  Tr. 344

The ALJ noted P.A. Docekal's exam and her conclusion that Plaintiff could perform

sedentary work.  Tr. 33.  She rejected the opinion and gave it "little weight" because

"[a]ssessments from a physician's assistant, without concurrent review and signature from a

medical doctor, are not considered to be from an acceptable medical source, and though

considered, such reports usually do not receive as great an amount of weight [] than those reports

from acceptable medical sources."  *Id.* (citing 20 C.F.R. §§ 404.1513(a), 404.1545, Soc. Sec.

Ruling (SSR) 96-2p, SSR 96-6p).

Plaintiff argues the ALJ erred because the ALJ failed to realize that Stephanie Richards,

M.D., approved the examination record and signed other parts of P.A. Docekal's report.  At the

start of the chart record, P.A. Docekal is listed as the provider.  Tr. 338.  At the end of the portion

of the record which included her physical examination, the record states that it was electronically

signed by P.A. Docekal and electronically "approved by" Dr. Richards.  Tr. 341.  The actual

Physical Functional Evaluation form containing the sedentary work restriction lists both P.A.

Docekal and Dr. Richards as the "examining professionals," but then has only P.A. Docekal's

signature in the space for "examining professional's signature."  Tr. 344.  Dr. Richards signed the

form as the "reviewing and adopting professional." *Id.* The report also contains a two-page

"Range of Joint Motion Evaluation" chart which shows, in actual measured degrees, Plaintiff's

range of motion for extension and flexion, or left and right, as appropriate, for several different

joints including back, neck, shoulders, legs, feet, and hands. Both P.A. Docekal and Dr.

Richards signed that report as an examining physician. Tr. 345-46.

Under the regulations applicable to this claim, evidence from an acceptable medical

source is distinguished from evidence from a non-acceptable medical source. 20 C.F.R. §§

404.1527(a)(1) , 416.927(a)(1) (2017) (applicable to claims filed before March 27, 2017 and

referring to statements from "acceptable medical sources"); 20 C.F.R. §§ 404.1427(f)(1),

416.927(f)(1) (2017) (applicable to claims filed before March 27, 2017 and referring to opinions

from medical sources who are not acceptable medical sources).[1] For pre-March 2017 claims,

acceptable medical sources include a licensed physician, licensed or certified psychologist,

licensed optometrist, licensed podiatrist, and qualified speech-language pathologists. 20 C.F.R.

§§ 404.1513(a), 416.913(a) (2013). Practitioners such as physician's assistants, nurse

practitioners, chiropractors, audiologists, naturopathic physicians, and therapists, are "other

sources" or non-acceptable medical sources. 20 C.F.R. §§ 4041513(d)(1), 416.913(d)(1) (2013).

Despite their status as non-acceptable medical sources, the Social Security Administration (SSA),

in SSR 06-03p, available at 2006 WL 2329939, recognized that "[w]ith the growth of managed

health care in recent years and the emphasis on containing medical costs, medical sources who

are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and

---

[1] For claims initiated after March 27, 2017, new regulations apply. *See* 20 C.F.R. §§
404.1502, 404.1513, 416.902, 416.913 (2017).

licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." 2006 WL 2329939, at *3[1]. The SSA recognized that "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.*

In case law applying the pre-March 2017 claim regulations, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons). However, if the record shows that the nurse practitioner worked closely under the supervision of an acceptable medical source treating physician, the nurse practitioner's opinion may be treated as part of the treating physician's opinion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). The nurse practitioner is considered the "agent" of the acceptable medical source. *Id.*

Plaintiff does not discuss *Gomez* or the 2011 Ninth Circuit case which cited *Gomez* and held that to the extent a nurse practitioner was working closely with and under the supervision of a physician, the nurse practitioner's "opinion is to be considered that of an acceptable medical source." *Taylor v. Comm'r*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez*, 74 F.3d at 971). Plaintiff's argument is simply that the standard articulated by the ALJ herself, meaning the lack of "concurrent review and signature from a medical doctor" is flatly inconsistent with the record

---

[1] SSR 06-03p has been rescinded for claims filed after March 27, 2017.

and thus, the ALJ erred by rejecting the opinion as one given by P.A. Docekal rather than one given by Dr. Richards. Defendant argues that the ALJ did not err because first, there is no evidence that P.A. Docekal worked closely with Dr. Richards allowing for a conclusion that P.A. Docekal was the agent of Dr. Richards, second, *Gomez* is no longer applicable following a change in regulations in 2000, and third, the ALJ appropriately gave the opinion reduced weight "consistent with the regulatory scheme for evaluating opinion evidence." Def.'s Brief 6.

The ALJ's treatment of P.A. Docekal's opinion is problematic for several reasons. First, I agree with Plaintiff that the ALJ was wrong when she wrote that the P.A. Docekal's assessment lacked concurrent review and signature from a medical doctor. As noted above, Dr. Richards signed the report in multiple places as an approving, reviewing, or examining practitioner. Her signatures all bear October 2013 dates, meaning at or close to the time of the examination. Tr. 338-48.

But, it is unclear what authority the ALJ relied on for her standard of "concurrent review and signature by a medical doctor." None of her citations refer to this standard and she provides no other citation to a regulation, SSR, or case law that supports it. Rather, the regulations clearly identify a physician's assistant as an "other medical" or "non-acceptable medical" source and unless the standard from *Gomez/Taylor* is satisfied, the opinion of a physician's assistant is not treated as one from an acceptable medical source.

Second, the record is unclear if the correct standard has been met. *Gomez* requires a close working relationship and supervision by an acceptable medical source for the opinion of a non-acceptable medical source to be treated as the opinion of an acceptable medical source. Dr. Richards signed the two-page "Range of Joint Motion Evaluation" chart as an examining

physician. Tr. 345-46. She and P.A. Docekal appear to have signed it on the date of the examination. Tr. 345 (showing date of examination and date of report to be October 7, 2013 and containing both P.A. Docekal's and Dr. Richards's signatures as examining physicians). Other signatures by Dr. Richards show her as reviewing or approving the examination and report and signing the documents several days after P.A. Docekal signed them. Tr. 341 (showing P.A. Docekal electronically signed the narrative report on Oct. 9, 2013 and Dr. Richards electronically approved the narrative report on Oct. 15, 2013); Tr. 344 (showing October 7, 2013 signature of P.A. Docekal as examining professional of the Physical Function Assessment and showing signature of Dr. Richards as reviewing and adopting professional and dated Oct. 11, 2013).

On the one hand, the record can be reasonably construed as showing joint participation in the examination by Dr. Richards and P.A. Docekal. If so, that would appear to meet the *Gomez/Taylor* standard. On the other hand, references to "approving" or "reviewing" would support the opposition conclusion: that P.A. Docekal herself conducted the examination and Dr. Richards simply approved of it without a close working relationship or supervision. Without questioning of Plaintiff about the examination or more information from P.A. Docekal or Dr. Richards, the record is ambiguous.

Defendant is correct that district courts and the Ninth Circuit have recognized that the regulation on which *Gomez* partially relied was amended in 2000. *See Britton v. Colvin*, 787 F.3d 1011, 1013 n.4 (9th Cir. 2015) (stating that *Gomez* partially relied on 20 C.F.R. § 416.913(a)(6), which has been repealed and expressing no view on *Gomez*'s continued validity); *Molina*, 674 F.3d at 1111 (declining to address the "continued vitality" of *Gomez* and noting that the regulatory section it relied on had since been repealed); *Vega v. Colvin*, No. 14CV1485-LAB

9DHB), 2015 WL 7769663, at *13 (S.D. Cal. Nov. 12, 2015) ("[A]s numerous district courts in the Ninth Circuit have recognized, both before and after *Taylor*, the regulation relied on in *Gomez* regarding 'interdisciplinary teams' involving 'other sources' such as nurse practitioners and physician assistants has since been amended, and 'interdisciplinary teams' are no longer considered 'acceptable medical sources'"), *adopted*, 2015 WL 7779266 (S.D. Cal. Dec. 2, 2015). But, currently, *Taylor* and *Gomez* set forth the law of the Ninth Circuit. *Taylor*, in particular, was decided eleven years after the regulation amendment/repeal but it still relied on *Gomez*. Moreover, here, it is possible that Dr. Richards herself conducted at least part of the examination and thus, this is not a *Gomez* situation at all.

Third, even if *Gomez/Taylor* is no longer good law, or alternatively, even if under *Gomez/Taylor* the record supported only the single conclusion that this report is the opinion of P.A. Docekal only, the ALJ still erred in disregarding it without further explanation. The only reason provided by the ALJ for giving P.A. Docekal's opinion little weight was that it was not from an acceptable medical source. But, even opinions from a non-acceptable medical source are to be evaluated with reference to the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c) (2013); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2017) (continuing these standards for pre-March 27, 2017 claims). The regulations, which apply to "*every* medical opinion we receive," require the Commissioner to consider several factors in "deciding the weight we give to *any* medical opinion." *Id.* (emphases added). Those factors include the nature of the examining or treating relationship, including the length of treatment, the nature and extent of treatment, the supportability of the opinion, the consistency of the opinion, and more. *Id.*

As explained in SSR 06-03p, "[o]pinions from these medical sources, who are not

technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  2006 WL 2329939, at *3.  Although, as the SSR explained for pre-March 2017 claims, medical sources who are not "acceptable medical sources" may not establish the existence of a medically determinable impairment,"information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.* at *2.  Factors for consideration of such other medical sources include:  (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.  *Id.* at *4-5.  Generally, the adjudicator "should explain the weight given to opinions from these 'other sources[.]'"  *Id.* at *6.

The ALJ discussed none of the relevant factors.  Defendant contends that the ALJ's decision to give P.A. Docekal's opinion little weight was consistent with the regulatory scheme for evaluating opinion evidence.  But, this is not evident from the ALJ's opinion.  Defendant argues because that the ALJ gave more weight to the state agency medical opinion than to P.A. Docekal's opinion, the ALJ provided a "germane reason" for rejecting P.A. Docekal's opinion because the state agency's opinion "aligned with the overall evidence of record."  Def.'s Brief 6.  If the ALJ herself had articulated this reason, I could consider Defendant's argument.  But, without an explanation by the ALJ, I cannot.  *Trevizo v. Comm'r*, 871 F.3d 664, 677 n.4 (9th Cir.

2017) (district court erred in looking beyond ALJ's stated reasons and explanation to support ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (court cannot affirm the agency on a ground not invoked by the ALJ without violating the *Chenery* rule) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that a reviewing court may affirm agency action only on "the grounds invoked by the agency")); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court may not make its own independent findings, and is "constrained to review the reasons the ALJ asserts.").

The ALJ separately explained her acceptance of the findings of a state agency medical consultant. But, that in and of itself does not provide an explanation for rejecting an independent medical opinion from a different provider. The only reason actually set forth by the ALJ in rejecting P.A. Docekal's opinion was that she was not an acceptable medical source. As Judge Acosta recently stated, "[m]erely finding [the naturopath] to not be an acceptable medical source is not a germane reason to discredit his opinion." *Castro v. Berryhill*, No. 3:16-cv-00726-AC, 2017 WL 2936797, at *11 (D. Or. July 10, 2017).

The ALJ erred in failing to provide an explanation for why she was treating P.A. Docekal's opinion as the opinion of a non-acceptable medical source given the evidence suggesting that Dr. Richards may have been an examining physician. Alternatively, the ALJ failed to support her rejection of P.A. Docekal's opinion with a germane reason for discrediting her opinion when she failed to discuss any of the factors relevant to the assessment of the weight to be given to *any* medical opinion and failed to provide any reason other than her status as a non-acceptable medical source.

/ / /

III. Evidence Submitted to the Appeals Council

After the ALJ's November 4, 2015 decision, Plaintiff appealed to the Appeals Council. Tr. 15-16.  She submitted additional evidence as part of that appeal.  Tr. 5 (Apps. Council Ex. List).  The evidence included medical records and a mental residual functional capacity statement dated after her August 2015 ALJ hearing.  *Id.*  The Appeals Council made the additional evidence part of the record.  Tr. 6.

One of the exhibits admitted into the record by the Appeals Council is a February 8, 2016 mental residual functional assessment (MRFC) performed by Barbara Majors, M.S.W., Q.M.H.P. Tr. 680-82.  There, she assessed the limitations on a number of Plaintiff's abilities within the range of severe, moderately severe, moderate, or slight/none.  *Id.*  Notable here are her opinions that Plaintiff had severe limitations in the ability to (1) maintain attention and concentration for two straight hours with at least four such sessions in a workday; (2) work in coordination with or proximity to others without being distracted; (3) make simple work-related decisions; (4) complete a normal workday and work week without interruptions from psychologically-based symptoms and to perform at a constant pace without an unreasonable number and length of rests; and (5) set realistic goals or make plans independently.  *Id.*  Additionally, Majors opined that Plaintiff had moderately severe limitations in the ability to (1) remember  locations and work-like procedures; (2) understand and remember detailed (3 or more step) instructions which may or may not be repetitive; (3) sustain an ordinary routine without special supervision; (4) accept instructions and respond appropriately to criticism from supervisors; (5) respond appropriately to expected changes in the work setting and routine; and (6) respond appropriately to unexpected changes in the work setting and routine.  *Id.*  Majors stated that Plaintiff's conditions had existed

to this degree of severity since at least February 2013.  Tr. 682.

Plaintiff argues that Majors's MRFC is new evidence which is material and contrary to the weight of the evidence in the record and therefore, it was error for the Appeals Council to decline review of the ALJ's decision.  Defendant argues that the Appeals Council considered Majors's MRFC and rejected it because it contained "new information about a later time" which did not affect the ALJ's November 4, 2015 decision.  Accordingly, Defendant contends that the evidence is not part of the Administrative Record and may not be considered by this Court.

Defendant's argument is inconsistent with the record.  First, the Appeals Council decision notes that it looked at three separate records relating to dates after the November 4, 2015 ALJ hearing.  Tr. 2.  None of those records included Majors's assessment.  *Id.* (citing records from the OHSU Richmond Clinic from Dec. 8, 2015 to Jan. 19, 2016, and from Agnes White FNP dated Nov. 1, 2016, and Nov. 29, 2016).  As to these records, the Appeals Council wrote: "The [ALJ] decided your case through November 4, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 4, 2015."  *Id.*  Thus, Defendant's statement that the Appeals Council considered Major's MRFC and rejected it because it contained information post-dating the ALJ decision is incorrect.  Second, the Appeals Council's Order expressly contradicts Defendant's contention that Majors's MRFC is not part of the Administrative Record.  Majors's report is listed on the Appeals Council's Exhibit List, Tr. 5, and then is expressly made part of the record in its March 15, 2017 Order.  Tr. 6 ("The Appeals Council has received additional evidence which it is making part of the record.  That evidence consists of the following exhibits: . . . . Exhibit B15F Mental Residual Functional Capacity Statement completed by Barbara Majors, MSW, dated February 8, 2016 - 4

pages").

In a 2012 case, the Ninth Circuit held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). There, the claimant submitted additional evidence to the Appeals Council. *Id.* at 1161. The Appeals Council received the evidence and made it part of the record. *Id.* It denied the claimant's request for review, noting that it had "'considered the additional evidence and found that this information did not provide a basis for changing the Administrative Law Judge's decision.'" *Id.* (quoting App. Council decision). The district court refused to consider the additional evidence submitted to the Appeals Council which was not before the ALJ and then affirmed the ALJ's denial of benefits. *Id.*

The claimant argued that the district court erred because the Appeals Council had incorporated the evidence into the administrative record and considered it in deciding not to review the ALJ's decision. *Id.* The Commissioner contended that the district court was limited to considering new evidence only if the claimant could show it was material and she had good cause for failing to raise it before the ALJ. *Id.* The Ninth Circuit agreed with the claimant. It was persuaded by regulations which permit claimants to submit new and material evidence to the Appeals Council and which require the Appeals Council to consider that evidence in determining whether to review the ALJ's decision, as long as the evidence relates to the period on or before the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.970(b)). Claimants need not show "good cause"

before submitting new evidence.  *Id.*

Defendant suggests that *Brewes* does not apply because the Appeals Council refused to consider Majors's MRFC given that "it was about a later time," and then did not include the evidence in the record.  Def.'s Brief 9.  Defendant notes that the Appeals Council, consistent with relevant regulations, explained that Plaintiff could file a new application based on this evidence. *Id.* (citing 20 C.F.R. § 404.976(b)(1) (providing that if a claimant submits "evidence which does not relate to the period on or before the date of the [ALJ] hearing decision, the Appeals Council will return the additional evidence to [the claimant] with an explanation as to why it did not accept the additional evidence and will advise [the claimant] of [his or her] right to file a new application.")).

As noted above, however, the Appeals Council did *not* include Majors's MRFC in the paragraph under "What We Considered" addressing post-ALJ decision evidence.  Tr. 2.  Yet, curiously, it expressly made Majors's MRFC part of the Administrative Record.  Thus, Defendant's attempt to distinguish *Brewes* is unpersuasive.  *Brewes* itself however instructs that evidence submitted to the Appeals Council is part of the record when it has been considered by the Appeals Council.  Here, the Appeals Council's treatment of Majors's report is unclear.  It obviously received Majors's report as it ordered it to be made part of the record.  Yet, it failed to mention it in discussing the evidence it considered.  Thus, it either failed to consider the report at all even though it received it and made it part of the record, or it considered it and impliedly determined that it offered no basis to review the ALJ's decision because it found, like the other evidence it did discuss, that the report concerned a time after the ALJ's decision.  Either way, however, because the evidence was expressly made part of the record, I consider it and conclude

that it warrants a remand to the ALJ for consideration.[2]

Majors's opinion arguably relates back to the period of time considered by the ALJ. Additionally, it is material. The Appeals Council "shall" consider new and material evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470 (2013). While Majors's MRFC is dated February 8, 2016, she expressly stated that Plaintiff's conditions have existed to the assessed degree of severity since February 2013. Tr. 682. Additionally, Plaintiff had been seen at Cascadia Behavioral Healthcare in February 2013 allowing Majors, who was one of two Cascadia providers Plaintiff saw in December 2015 and January 2016, to review the 2013 record. Tr. 665-78. Because Majors indicated Plaintiff's conditions had existed since February 2013 which coincides with Cascadia's initial assessment of Plaintiff, Majors's opinion reasonably suggests that it relates to the period *before* the ALJ hearing date. Without more discussion about whether Majors's MRFC is indeed retrospective, it was error for the Appeals Council to fail to consider it. *E.g.*, *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (reports containing observations made after the period for disability remain relevant in assessing a claimant's disability; "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"); *Senter v. Astrue*, No. 10-165 PJW, 2011 WL 3420426, at *3 (C.D. Cal. Aug. 4,

---

[2] The evidence does not trigger sentence six of 42 U.S.C. § 405(g) because the Appeals Council made the evidence part of the Administrative Record. *See Will v. Colvin*, No. 3:14-cv-00754-JE, 2016 WL 3450842, at *6-10 (D. Or. May 18, 2016) (because Appeals Council did not make new evidence part of the record, resolving issue of remand was pursuant to sentence six), *adopted*, 2016 WL 3457017 (D. Or. June 20, 2016); *Armani v. Colvin*, No. C14-175-RSM-MAT, 2015 WL 3561670, at *2 (W.D. Wash. May 19, 2015) (evidence not incorporated into the administrative record by the Appeals Council considered under sentence six of 42 U.S.C. § 405(g)), *adopted*, 2015 WL 3567061 (W.D. Wash. June 5, 2015).

2011) (if not offered as a retrospective opinion, ALJ may reject a medical opinion completed years after date of last insured); *Boucher v. Colvin*, No. C13-47-MAT, 2013 WL 3778891, at *2–3 (W.D. Wash. July 18, 2013) ("while post-[date last insured] evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective").

Additionally, the ALJ found one of Plaintiff's severe impairments to be adjustment disorder with mixed anxiety and depressed mood. Tr. 23. In February 2013, Cascadia diagnosed her as having adjustment disorder with depressed mood, and in late 2015 - early 2016 as having major depressive disorder. Tr. 666, 674, 677. When a later assessment by a medical or mental health practitioner is consistent with an impairment the ALJ herself has found to be severe, the later assessment may reasonably relate to the time period considered by the ALJ. *See Crawford v. Colvin*, No. ED CV 5-1436-PLA, 2016 WL 1237342, at *7 (C.D. Cal. Mar. 28, 2016) (finding that post-decision medical opinions "related to" time period considered by the ALJ because they reported on the same conditions the plaintiff claimed as the bases of her disability and that the ALJ found to be severe impairments).

Moreover, given that the ALJ herself found Plaintiff to suffer from a similar mental impairment as noted by Majors in her MRFC report and then assigned some limitations in her RFC addressing that impairment (*e.g.*, restricting her to jobs requiring only superficial, incidental interaction with the general public, jobs that do not require teamwork, and jobs that require remembering, understanding, and carrying out tasks or instructions consistent with occupations rated SVP 1 or 2), Majors's opinions are material. "New evidence is material when it bears directly and substantially on the matter in dispute, and if there is a reasonable possibility that the

new evidence would have changed the outcome of the determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) (internal quotation marks and brackets omitted). Here, Majors's opinions are more restrictive than those assessed by the ALJ and if ultimately credited, would affect the outcome of the disability determination.

In summary on this issue, it is unclear if the Appeals Council's actually "considered" Majors's MRFC. Nonetheless, there is no dispute that the Appeals Council made Majors's MRFC part of the Administrative Record. Majors's MRFC raises a reasonable argument that it addresses the period of time considered by the ALJ. The diagnosis upon which Majors based her report aligns with the severe mental impairment the ALJ found that Plaintiff suffers. Majors offers limitations which, while more restrictive than those given by the ALJ, are similar to some given by the ALJ. However, if credited, her restrictions could change the outcome of the determination. Thus, the Appeals Council erred regardless of whether it actually considered Majors's MRFC or failed to consider it.

IV. Remand for Additional Proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler*, 775 F.3d at 1100 ("credit-as-true" rule has three steps). First, the

ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff seeks a remand for benefits. This case, however, is not one with "rare circumstances" justifying that type of remand. The ALJ failed to provide sufficient reasons for rejecting Plaintiff's credibility and P.A. Docekal's opinion. However, the record is not fully developed and further proceedings are required. As to Plaintiff's credibility, some of the ALJ's reasons are not supportable because the activities she describes as being inconsistent with Plaintiff's limitations are not inconsistent. But, some, such as her use of medication, were not fully developed by the ALJ and a determination of whether she has or has not had conservative treatment for her impairments is not clear from the record. Additionally, the weight to be given to P.A. Docekal's opinion needs to be addressed. It is unclear on this record whether P.A. Docekal's opinion should be treated as the opinion of Dr. Richards. And, even if it is not, the ALJ needs to address P.A. Docekal's opinion under the correct standards and by applying the relevant factors. As P.A. Docekal's opinion indicates that Plaintiff could perform work at the sedentary level, it does not clearly establish disability even if it were credited as true. Furthermore, Majors's MRFC has not been evaluated in a meaningful way. This should be done

by the factfinder in the first instance. For these reasons, remand for additional proceedings is required.

CONCLUSION

The Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

Dated this _____ 15 _____ day of _____ May _____, 2018


_____
Marco A. Hernandez
United States District Judge